IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

HEALTH SYSTEMS
INTERNATIONAL, LLC,

     Plaintiff,

vs.

KEVIN W. BABB,

     Defendant.

No. C11-0039

REPORT AND
RECOMMENDATION

_____

## TABLE OF CONTENTS

*I.*     *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*II.*    *PROCEDURAL HISTORY.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.*   *RELEVANT FACTS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*IV.*   *DISCUSSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      *A.*    *The Parties' Arguments.* . . . . . . . . . . . . . . . . . . . . . . . . . 5
      *B.*    *Applicable Law.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      *C.*    *Analysis.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*V.*    *RECOMMENDATION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## I. INTRODUCTION

On the 3rd day of May 2011, this matter came on for hearing on the Motion to Compel Joinder of a Necessary Party (docket number 38) filed by the Defendant on March 18, 2011. Plaintiff Health Systems International, LLC ("HSI") was represented by its attorneys, Kevin H. Collins and Michael A. Wukmer. Defendant Kevin W. Babb was represented by his attorneys, Mark A. Zaiger and Richard Garberson.

## II. PROCEDURAL HISTORY

This case was filed initially in the United States District Court for the Southern District of Indiana on October 8, 2010. HSI filed an amended complaint on November 30, 2010. Babb filed his answer, including certain affirmative defenses, on December 17, 2010. An amended answer was filed on December 30, 2010.

Also on December 17, 2010, Babb filed a motion to transfer venue to the Northern District of Iowa. On March 18, 2011 – while the case was still pending in the Southern District of Indiana – Babb filed the instant motion to compel joinder of a necessary party. Later that same day, the Court ordered the case transferred to the Northern District of Iowa. *See* docket number 40. On April 4, 2011 – after the case had been transferred to this district – HSI filed a resistance to Babbs' motion to compel joinder.

A status hearing was held on May 3, 2011, in conjunction with the hearing on the instant motion to compel joinder. At that time, the Court directed counsel to discuss pretrial deadlines and then submit a proposed scheduling order to the Court. The parties were advised that if they are unable to agree on pretrial deadlines, then a telephonic scheduling conference would be set. The Court neglected to give the parties a deadline for submitting a proposed scheduling order, and no proposed order has been submitted to date.

## III. RELEVANT FACTS

In April 2008, HSI agreed to purchase substantially all of the assets of a medical case management business known as BBCM, which was owned by Kathleen Bass and Kevin Babb.[1] The transaction was completed through an asset purchase agreement executed by Bass, in her capacity as president of BBCM and as a shareholder, and by

---

[1] At the time of the transaction, the business was called Bass & Babb Case Management, Inc., and included its wholly owned subsidiary, Bass & Babb Southwest, LLC. As part of the transaction, the names were changed to BBCM, Inc. and BBSW, LLC, respectively. For simplicity, the Court will simply refer to the business as BBCM.

Babb, in his capacity as a shareholder.[2] Russell W. Sherlock, CEO of HSI, executed the agreement on its behalf. As part of the transaction, both Bass and Babb became employed by HSI, pursuant to employment agreements.

On June 30, 2010, BBCM sued HSI in the Northern District of Iowa, claiming that HSI owes additional amounts pursuant to the asset purchase agreement.[3] On October 8, 2010, HSI sued Bass, claiming that Bass breached her employment agreement with HSI, thereby giving rise to damages.[4] On the same day that it sued Bass in Iowa, HSI brought the instant action against Babb in Indiana.

Turning to the instant action, HSI asserts in its amended complaint that this case "arises out [of] an employment agreement." In paragraph 1 of the amended complaint, HSI summarizes the "nature of the case" as follows:

> After he was terminated, HSI learned that Defendant had failed to comply with his contractual obligations by gaining unauthorized access to HSI's computer and computer system, committing mass deletions of HSI's business information, asserting control over HSI's confidential information, and soliciting a former employee of HSI and hiring her at a business owned by Defendant.

*See* Amended Complaint (docket number 15) at 1, ¶ 1.

However, in its amended complaint, HSI's allegations go far beyond an alleged breach of Babb's employment agreement. That is, HSI also claims that Babb breached the asset purchase agreement and a severance agreement which was executed when his employment with HSI was terminated. HSI notes that Babb was a signator to the asset

---

[2] It is the Court's understanding that Kathleen Bass owned 55% of BBCM, with Kevin Babb owning the remaining 45%.

[3] *See BBCM, Inc., et al. v. Health Systems International, LLC*, No. 1:10-cv-00086-EJM (N.D. Iowa).

[4] *See Health Systems International, LLC v. Kathleen A. Bass*, No. 1:10-cv-00137-EJM (N.D. Iowa).

purchase agreement, which required him to hold "confidential information in strict confidence."[5] Similarly, HSI asserts in its amended complaint that the asset purchase agreement contained non-solicitation restrictions applicable to Babb.[6] Of particular importance to the instant motion, HSI cites the asset purchase agreement for the proposition that if Babb violated the terms of any confidentiality or non-solicitation provision, then the earnout amount payable under the asset purchase agreement to BBCM "shall be reduced by an amount equal to" Babb's pro rata share.[7]

HSI asserts that following the termination of his employment with HSI, Babb "maliciously, systematically and methodically" deleted information from the company computer and otherwise transferred confidential information to an external hard drive.[8] HSI asserts that Babb's "actions during the Deletion Period were violations of his confidentiality obligations included in the [asset purchase agreement] and the Employment Agreement."[9] According to HSI, "[p]ursuant to the [asset purchase agreement], such violations require Defendant to forfeit his pro rata share (45%) of the Earnout Amount for Year Two through Year Four."[10] HSI also asserts in its amended complaint that Babb's solicitation and hiring of an HSI employee "constituted a patent violation of the non-solicitation provisions of the [asset purchase agreement], Employment Agreement, and Severance and Release Agreement."[11]

---

[5] *See* Amended Complaint (docket number 15) at 4-5, ¶¶ 17-18.

[6] *Id.* at 6, ¶¶ 24-25.

[7] *Id.* at 7, ¶ 28.

[8] *Id.* at 7-8, ¶ 33.

[9] *Id.* at 9, ¶ 39.

[10] *Id.*, ¶ 40.

[11] *Id.* at 13, ¶ 64.

HSI's amended complaint is brought in five counts. Count II is entitled "Breaches of Contracts." According to HSI, "Defendant's actions constitute material breaches of the terms and conditions of the [asset purchase agreement], Employment Agreement and the Severance and Release Agreement."[12] HSI reasserts its claims that Babb's actions violated the confidentiality provisions of all three agreements and the non-solicitation provisions of all three agreements.[13]

## IV. DISCUSSION

### A. The Parties' Arguments

Babb asks that the Court order HSI to amend its complaint to join BBCM as a defendant.[14] In his brief, Babb asserts that BBCM is a necessary party "because HSI's Amended Complaint seeks forfeiture of payments that it owes to BBCM, not Mr. Babb, under an Asset Purchase Agreement."[15] In its amended petition, HSI asserts repeatedly that Babb's breaches require "forfeiture" of his share of any earnout payments otherwise owed. For example, HSI asserts that "[p]ursuant to the [asset purchase agreement], such violations require Defendant to forfeit his pro rata share (45%) of the Earnout Amount for Year Two through Year Four."[16] Among the relief requested, HSI asserts "[a]n

---

[12] *Id.* at 14, ¶ 71.

[13] *Id.* at 15, ¶¶ 74-76.

[14] Actually, Babb's motion is inconsistent regarding the relief requested. In the first sentence of his motion, Babb states that "[t]his Court should order HSI to amend its complaint to join BBCM. . . ." *See* Motion to Compel Joinder (docket number 38) at 1. In the prayer of his motion, however, Babb "respectfully requests that the Court dismiss this action. . . ." *Id.* at 2. However, attached to the motion was a proposed order directing that HSI "shall amend its complaint to name BBCM, LLC as a Defendant. . . ." *See* Proposed Order on Motion to Compel Joinder (docket number 38-1).

[15] *See* Babb's Brief (docket number 39) at 1.

[16] *See* Amended Complaint (docket number 15) at 9, ¶ 40.

entitlement to a set off against any amounts HSI owes to Defendant (if any) under the [asset purchase agreement] and the Separation and Release Agreement."[17]

In its resistance, HSI downplays the importance of the asset purchase agreement and asserts that this action "has no bearing on BBCM." According to HSI, "[t]his case involves Kevin Babb's violations of his Employment Agreement and his fraudulent inducement of HSI to enter into a Severance Agreement."[18] In describing the "heart" of its allegations against Babb, HSI fails to mention the numerous allegations found in its amended complaint that Babb breached the asset purchase agreement.

> **Babb's fraudulent inducement of the Severance Agreement, his violation of the confidentiality and non-solicitation provisions of the Employment Agreement, and his conversion of HSI's property in violation of the Employment and Severance Agreements are the heart of HSI's allegations against him, and provide for the majority of the relief sought by HSI.** By violating his obligations under the Employment Agreement and Severance Agreement, as a remedy, Defendant must forfeit the remainder of his Separation Pay and repay to HSI the Separation Payments previously made. None of these wrongful activities (to HSI's current knowledge) or remedies have any bearing on BBCM.
>
> The only connection with BBCM lies in an additional remedy that HSI has against Babb, which is not dependent in any way on whether BBCM is a party. By violating confidentiality, non-competition or non-solicitation provisions of *any agreement* with HSI, Babb triggered a provision of the APA which allows HSI to retain any pro-rata portion of the APA earnout, if any, that would otherwise have been funneled to Babb. This is solely an enforcement mechanism of amounts that will be separately determined to be owing under the APA, if any.

---

[17] *Id.* at 18, ¶ D.

[18] *See* HSI's Resistance (docket number 45) at 2.

HSI's Resistance (docket number 45) at 4 (emphasis in original). According to HSI, "[t]he effect Babb's violations of the Employment and Severance Agreements has on his ultimate right to recover earnouts is a tangential issue which has no practical effect on BBCM or Babb, and accordingly, does not require joinder of BBCM as a party to this litigation."[19]

## B. Applicable Law

The joinder of a required party is governed by FEDERAL RULE OF CIVIL PROCEDURE 19. Rule 19(a) mandates the joinder of a party "who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction" if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1).

Before addressing the issues at hand, the Court pauses to note parenthetically that this case does *not* implicate Rule 19(b). Most of the litigation regarding compulsory joinder involves a "required party" whose joinder is not "feasible" because it is not subject to service of process or the joinder would deprive the Court of subject-matter jurisdiction. Under those circumstances, Rule 19(b) requires the Court to determine whether the action should be dismissed, or whether the action should proceed in the absence of the "required" party. *See, e.g., Provident Tradesmens Bank & Trust v. Patterson*, 390 U.S. 102, 108 (1968) (although the third party fell "within the category of persons who, under § (a),

---

[19] *Id.* at 5.

should be 'joined if feasible,'" the third party could not be made a defendant without destroying diversity). *See also Baker Group v. Burlington Northern and Santa Fe Ry Co.*, 451 F.3d 484, 490-91 (8th Cir. 2006) ("If the absent party is a necessary party, as defined in Rule 19(a), but joinder is not feasible, then Rule 19(b) sets forth factors to apply in determining whether 'in equity and good conscience the action should proceed among the parties before it, or should be dismissed.'").

In this case, however, it is undisputed that BBCM is subject to service of process, and joining BBCM will not deprive the Court of subject-matter jurisdiction. Therefore, if BBCM is a "required party" as defined in Rule 19(a), then the Court must order that it be joined as a party and Babb's instant motion will be granted. On the other hand, if BBCM is not a "required party," then the motion to compel joinder will be denied. In either event, it is not necessary for the Court to consider Rule 19(b), which governs those circumstances where joinder of a "required party" is not "feasible" because it is not subject to service or its joinder would deprive the Court of subject-matter jurisdiction. *See also Gwartz v. Jefferson Mem. Hosp. Ass'n*, 23 F.3d 1426, 1428 (8th Cir. 1994) ("A court must first determine whether a person should be joined if 'feasible' under Rule 19(a), *i.e.*, whether a person is 'necessary.' If the person is not necessary, then the case must go forward without him and there is no need to make a Rule 19(b) inquiry.").

The Court now turns back to the issue at hand. Is BBCM a "required party" as set forth in Rule 19(a)? "A party is a necessary party under 19(a), if it meets either the criteria under 19(a)(1) or 19(a)(2)." *Sykes v. Hengel*, 220 F.R.D. 593, 596 (S.D. Iowa 2004). "The criteria under 19(a)(1) focuses on whether relief can be afforded the existing parties in the absence of the party in question, whereas, 19(a)(2) focuses on the effects the litigation would have on the absent party." *Id.*

## C. Analysis

FEDERAL RULE OF CIVIL PROCEDURE 19(a)(1) and (2) identifies three circumstances when a person who is not a party to the lawsuit must be joined as a party. Accordingly, BBCM must be joined in this action if any of the following are established:

1.  In BBCM's absence, the Court cannot give "complete relief" to HSI and Babb;

2.  BBCM has an interest relating to the subject of this action, and disposition of the action in BBCM's absence may "as a practical matter" impair BBCM's ability to protect that interest; or

3.  BBCM has an interest in the action and disposing of the action in BBCM's absence may expose Babb to a "substantial risk" of multiple liability or inconsistent obligations.

Here, Babb claims that all three alternatives apply. First, Babb asserts that without BBCM, the Court cannot afford the "complete relief" sought by HSI. In its amended complaint, HSI asserts that Babb's breaches of contract require a forfeiture of his pro rata share of any earnout amounts which are payable to BBCM. According to HSI, it "is not obligated to pay and Defendant has forfeited 45% of any Earnout Payment that is or may become payable to BBCM."[20] HSI asserts that it is entitled to a "set off" against any amounts it may owe under the asset purchase agreement. HSI rejects Babb's argument that BBCM is a required party, asserting that BBCM is simply a "funnel" through which amounts are directed to Babb and others. According to HSI, "[t]here are no direct or immediate effects on BBCM, since BBCM ultimately stands to lose or gain <u>nothing</u> whatsoever regardless of the outcome of this litigation."[21]

---

[20] *See* Amended Complaint (docket number 15) at 13, ¶ 64.

[21] *See* HSI's Resistance (docket number 45) at 9.

The Court believes that Babb has the better argument. It is undisputed that any earnout payments which may be due from HSI are payable to BBCM. While BBCM may then distribute those payments to its shareholders, it is nonetheless a legal entity which is entitled to receive any payments owed under the asset purchase agreement. HSI wishes to shortcut the process by refusing to pay BBCM any amounts which Babb may owe to HSI. If BBCM is not a party to this action, however, then I believe the Court cannot order BBCM deprived of payments lawfully due under the asset purchase agreement. Accordingly, the Court cannot give HSI "complete relief" in this case, unless BBCM is a party.

Babb claims the second alternative set forth above applies for similar reasons. That is, BBCM claims that it is entitled to additional earnout payments from HSI pursuant to the asset purchase agreement. BBCM has sued HSI in a separate action to collect those amounts. In this action, HSI seeks a court order offsetting the earnout payments by any amounts which Babb may owe HSI for breach of various contracts. If BBCM is not a party to this action, then its ability to protect its interest in the earnout payments may be impaired or impeded. HSI emphasizes that "Babb's violation of his Employment and Severance Agreements with HSI, which are the core of this matter, does not implicate or involve BBCM."[22] If HSI were simply seeking monetary or other equitable relief against Babb, that would certainly be true. Here, however, the relief sought by HSI directly impacts BBCM's claim (asserted in a separate lawsuit) to additional earnout payments from HSI. By seeking relief against the earnout payments payable to BBCM, HSI has put BBCM's interests at issue. Accordingly, BBCM's joinder is compulsory under Rule 19(a)(1)(B)(i).

Finally, Babb also claims that if BBCM is not a party to this action, then Babb is exposed to potential future litigation. As I understand it, Babb claims that if BBCM's earnout payments are reduced in this action by Babb's alleged wrongful conduct, then

---

[22] *Id.* at 8.

BBCM may bring a future action against Babb for reimbursement of those amounts. The Court believes, however, that Babb's exposure to actual double liability is remote. *If* BBCM's earnout payment is reduced by some amount in the instant action, representing Babb's wrongful conduct; and *if* BBCM then sues Babb to recover the reduced payment; and *if* Babb was then required to pay BBCM for the reduction in the earnout payments; then it appears that BBCM would simply return that amount to Babb in his capacity as a BBCM shareholder. To require joinder under Rule 19(a)(1)(B)(ii), Babb must show that failure to include BBCM as a party to this action would result in "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." I do not believe that there is a "substantial risk" of that result here.

In summary, BBCM must be joined as a party to this lawsuit if any one of three alternatives has been established. *See* FED. R. CIV. P. 19(a)(1). For the reasons set forth above, I believe that the first and second alternatives apply. *See* FED. R. CIV. P. 19(a)(1)(A) and (B)(i). That is, if BBCM is not a party, then the Court will be unable to grant HSI the complete relief requested in its amended complaint. Similarly, if BBCM is not a party to this action, then its ability to protect its interest in further earnout payments under the asset purchase agreement will be impaired or impeded. Therefore, I recommend that Babb's motion to compel joinder of BBCM be granted.

## V. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the Motion to Compel Joinder of a Necessary Party (docket number 38) filed by the Defendant be **GRANTED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need*

to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on May 3, 2011.

DATED this _18th_ day of May, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA